# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TWITTER, INC., <br><br> Defendant. | Case No. 6:12-cv-00792-MHS-CMC <br><br> JURY |

**PLAINTIFF'S OPPOSITION TO TWITTER'S MOTION TO CHANGE VENUE**

**PURSUANT TO 28 U.S.C. § 1404(a)**

## INTRODUCTION

As Evolutionary Intelligence has explained in its pending motion to amend the complaint against Twitter, this case involves five parties—Evolutionary Intelligence, LLC; Twitter, Inc.; Crimson Hexagon, Inc.; Dataminr, Inc.; and Mass Relevance, Inc. These entities, along with their witnesses and documentary evidence, are located in various places in the United States. Evolutionary Intelligence and Crimson Hexagon are located in Massachusetts; Twitter is located in California; Dataminr is located in New York; and Mass Relevance is located in Texas.

Regardless of where this case is venued, witnesses will be required to travel. But, as explained below, the Eastern District of Texas is a more convenient district than the Northern District of California. If venue is maintained in the Eastern District of Texas, each party would be required to travel an average of 1,213 miles. If this case were transferred to the Northern District of California, each party would be required to travel 1,889 miles—*55%* farther—to get to trial.

Accordingly, Twitter's motion to change venue should be denied, and the litigation should proceed against all parties in this District.

## STATEMENT OF FACTS

On October 17, 2012, Plaintiff Evolutionary Intelligence filed its original complaint against Twitter, alleging that it infringes U.S. Patent Nos. 7,010,536 and 7,702,682. Subsequently, Evolutionary Intelligence discovered three additional parties—Crimson Hexagon, Inc.; Dataminr, Inc.; and Mass Relevance, Inc.—that infringe the patents using Twitter's Application Programming Interfaces ("APIs"). In addition, Evolutionary Intelligence discovered that Twitter is inducing the infringement of the patents by each of these companies. Following these discoveries, Evolutionary

Intelligence filed a motion to amend the complaint to join Crimson Hexagon, Dataminr, and Mass Relevance to this case.

The parties, along with their witnesses and documentary evidence, are located in various places in the United States. Evolutionary Intelligence is based in the Boston, Massachusetts area. (De Angelo Decl. ¶ 2.)[1] The sole inventor of the patents, Michael De Angelo, is also based in the Boston area. (*Id.* ¶ 3.) Twitter is based in San Francisco, California. Crimson Hexagon is based in Boston, Massachusetts. (Safier Decl. Ex. E.) Dataminr is based in New York, New York. (*Id.* Ex. C.) And Mass Relevance is based in Austin, Texas. (*Id.* Ex. F.)

To assist the Court in determining the location of the witnesses and documentary evidence in this case, Evolutionary Intelligence has prepared a chart identifying the specific witnesses of each party, and has set forth the name of each witness, his or her title, location, and subject of testimony. (*See* Safier Decl. Ex. A.) Evolutionary Intelligence has also attached the primary source documents that support the information provided in this chart. (*See id.* Exs. B–D.)

## APPLICABLE LAW

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.2008) ("Volkswagen II"). The Supreme Court has noted that Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of

---

[1] "De Angelo Decl." refers to the April 8, 2013 declaration of Michael De Angelo, filed in *Evolutionary Intelligence v. Apple, Inc.*, Case No. 6:12-cv-00783-MHS-CMC.

2

convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Fifth Circuit has stated the first "threshold" determination a district court must make under Section 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). After making this determination, the district court must consider the convenience of the parties and witnesses in both forums. *Id.*; *see also Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir.1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); Bolt v. Toyota Indus. Corp., 351 F.Supp.2d 597, 599 (E.D. Tex. 2004).

A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Volkswagen I*, 371 F.3d at 203. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)); *see also In re TS Tech*, 551 F.3d at 1319. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws o[r] the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper*, 454 U.S. at 241 n. 6); *see also In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314–15. Rather, the plaintiff's choice of venue contributes to the defendant's burden to prove that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *Id.* at 315; *In re TS Tech*, 551 F.3d at 1319. Similarly, a defendant's stated preference of venue is irrelevant. *See EMG Tech., LLC v. Microsoft Corp.*, 6:09 CV 367, 2010 WL 3835768 (E.D. Tex. Sept. 28, 2010).

## ARGUMENT

**I.  The Eastern District of Texas is the Most Convenient Forum for this Litigation.**

The five parties in this case are located on the West Coast, the East Coast, and the South. As explained below, the geographical dispersion of the parties, witnesses, and evidence means that the Eastern District of Texas is the most convenient forum for this litigation. This District is certainly more convenient than the Northern District of California—Twitter's favored district.

**A.  The Private Interest Factors Favor the Eastern District of Texas.**

The private interest factors weigh in favor of proceeding in this District, rather than the Northern District of California. Twitter is the only party located in or near California. The other four parties—as well as their witnesses and documentary evidence—are closer to the Eastern District of Texas. Evolutionary Intelligence and Crimson Hexagon are based in Massachusetts. (*See* Statement of Facts, *supra*.) Dataminr is based in New York. (*See id.*) And Mass Relevance is based in Austin, Texas. (*See id.*)

**1.  The relative ease of access to sources of proof**

The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringers. *In re Genentech, Inc.*, 566 F.3d 1338,

4

1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Id.* To meet its burden, the party seeking transfer must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.,* No. 6:08–cv–211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009); *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–cv–113, 2009 WL 331889, at *3, (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Because the patents-in-suit involve software, the primary sources of proof in this litigation are expected to be software development documents and source code. Unsurprisingly, publicly available information indicates that nearly all of the software developers of each defendant are located in or near the city of that defendant's principal place of business. (*See* Safier Decl. Exs. A–D.) Because software developers routinely work with software development documents and source code, the development documents and source code are expected to be in the same locations. Specifically, Twitter's documents and code are located in San Francisco, California; Crimson Hexagon's, in Boston; Dataminr's, in New York; and Mass Relevance's, in Texas. (*See* Safier Decl. Exs. A–D.) As explained in more detail below, on balance these locations are closer to the Eastern District of Texas than the Northern District of California.

5

### 2. The availability of compulsory process to secure the attendance of witnesses

"The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, 6:12-CV-100 LED-JDL, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013) (citing *Novelpoint Learning v. Leapfrog Enter.*, No. 6:10–cv–229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses)); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10–cv–688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Twitter has not identified a single technical witness who resides in California. Instead, Twitter relies entirely on vague assertions about where it thinks relevant witnesses may reside. The closest Twitter comes to identifying a technical witness is to assert that "many of [Twitter's] employees reside in or near the Northern District of California." (Twitter Br. at 9.) This assertion, even if true, is too vague to be given any significant weight in the transfer analysis. *See Clayton v. Hartford Underwriters Ins. Co.*, Case No. 2:07CV386, 2008 WL 2704871 (E.D. Tex. July 7, 2008) ("Hartford has not met its burden to show that the factors favor transfer. … At the very least, Hartford needed to identify specific trial witnesses and their purported testimony."); *see also Gajeske v. Wal Mart Stores, Inc.*, Case No. 1:99-CV-777, 2000 WL 34401691 (E.D. Tex. Apr. 26, 2000) ("Here, Gajeske has identified three witnesses that reside in this district. Wal–Mart, on the other hand, has not identified any specific witnesses that reside in the proposed district. Hence, this district is more convenient to the witnesses identified."); *Lonestar Inventions, L.P. v. Sony Elecs. Inc.*, Case No. 6:10–CV–588–LED–JDL, 2011 WL 3880550, at *3 (E.D. Tex. Aug. 29, 2011) (giving very little weight to the compulsory process factor due to "Sony's failure to identify specific

potential witnesses other than patent prosecution counsel."); *J2 Global Commc'ns*, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties.").

The only witnesses in California that Twitter identifies with specificity are seven patent prosecutors. (Twitter Br. at 8.) Tellingly, Twitter does not identify a single issue that any of these patent prosecutors may testify about. Accordingly, the Court should decline to consider these witnesses in the transfer analysis. *See Net Nav. Sys., LLC v. Cisco Sys., Inc.,* 4:11-CV-660, 2012 WL 7827544, *3-4 (E.D. Tex. Aug. 24, 2012) (declining to consider location of prosecuting attorneys, where party seeking transfer failed to explain why their testimony would be relevant). This is especially true because prosecuting attorneys are rarely called to testify at trial, because (i) much of their knowledge involves privileged communications or is otherwise subject to work product protection; and (ii) most of the non-protected knowledge they do happen to have is already a matter of public record, in the USPTO prosecution history wrapper.

In addition, most of the patent prosecutors that Twitter identifies did very little, and certainly did nothing that could make their testimony relevant to this litigation. James Okamoto did not file a single document, and had no substantive communications with the applicant. (Kennedy Decl. Ex. H; De Angelo Decl. ¶ 5.)[2] Carl Kukkonen is listed on a single document in the application leading to the '536 patent—a petition to add one non-substantive sentence to the specification describing Figure 3B. (Kennedy Decl. Ex. N.) That non-substantive correction to the specification was made after the Examiner had already allowed all the patent's claims. (*Id.*) In fact, Mr. De Angelo's principal communications with Mr. Kukonnen involved a patent that

---

[2] "Kennedy Decl." refers to the April 8, 2013 declaration of Todd Kennedy, filed in *Evolutionary Intelligence v. Apple, Inc.*, Case No. 6:12-cv-00783-MHS-CMC.

7

is not asserted in this case. (De Angelo Decl. ¶ 5.) William Hunter had no connection with the patents other than *stamping* (i.e., not even signing) the same petition that Mr. Kukkonen signed. (*Id.*) Finally, Mark Shean did not have *any* role in either of the patent applications. (*Id.*) Accordingly, it is highly unlikely that anyone will depose Mr. Okamoto, Mr. Kukkonen, Mr. Hunter, or Mr. Shean in this case, let alone call them as witnesses.

Finally, Twitter asserts that "it is highly probable that witnesses working for the companies that previously owned the Assserted Patents will have relevant information to this litigation." (Twitter Br. at 8.) Besides being too vague to be considered (*see, e.g.*, *Gajeske*, 2000 WL 34401691), that allegation is false. The only individual at any of those companies with any knowledge of the patents-in-suit and the claimed inventions is Michael De Angelo, who resides in Massachusetts. (De Angelo Decl. ¶ 4.)

### 3. The cost of attendance for willing witnesses

In determining the cost of attendance for willing witnesses, the Court is required to consider the convenience of both the party and non-party witnesses. *Volkswagen I*, 371 F.3d at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d. 761, 765–66 (E.D. Tex. 2009).

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. at 205. When, as here, the transferor and transferee venues are more than 100 miles apart, the district court will determine the respective distances between the location of all the identified material and relevant

8

witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

According to the vague assertions of Twitter, which should be discounted for lack of specificity, most of Twitter's witnesses are located in California. (Twitter Br. at 9–10.) Evolutionary Intelligence is based in the Boston area. (De Angelo Decl. ¶ 2.) Evolutionary Intelligence has specifically identified 14 witnesses of Crimson Hexagon. (*See* Safier Decl. Exs. A, B.) All of those witnesses are in the Boston area. (*See id.*) Evolutionary Intelligence has also identified 12 witnesses of Dataminr. (*See* Safier Decl. Exs. A, C.) With the exception of one witness, who live in Boston, all of these witnesses are located in New York. (*See id.*) Finally, Evolutionary Intelligence has identified 18 witnesses of Mass Relavence. (*See* Safier Decl. Exs. A, D.) All of these witnesses are located in Austin, Texas. (*See id.*)

If venue is maintained in the Eastern District of Texas, each party would be required to travel an average of 1,213 miles. If this case were transferred to the Northern District of California, each party would be required to travel 1,889 miles—55% farther—to get to trial.

| Party | Principal Place Where Witnesses Reside | Miles to N.D. Cal. | Miles to E.D. Tex. |
|---|---|---|---|
| Evolutionary Intelligence | Newton, MA | 2,686 | 1,485 |
| Twitter, Inc. | San Francisco, CA | 0 | 1,573 |
| Crimson, Hexagon, Inc. | Boston, MA | 2,693 | 1,493 |
| Dataminr | New York, NY | 2,566 | 1,311 |
| Mass Relevance | Austin, TX | 1,500 | 204 |
| | TOTAL DISTANCE | 9,445 | 6,066 |
| | AVERAGE DISTANCE PER PARTY | 1,889 | 1,213 |

(*See* Kennedy Decl. Ex. D.) Accordingly, application of the 100-mile rule clearly weighs in favor of maintaining venue in this District.

9

In addition, lodging in the Northern District of California is far more expensive than in Tyler or Texarkana. The average daily rate for lodging in San Francisco is $186.96, compared to an average rate of just $77.00 in Tyler. (*See* Kennedy Decl. Exs. E and F.)

4. **All other practical problems that make trial of a case easy, expeditious and inexpensive**

"Practical problems include issues of judicial economy." *Balthaser Online, Inc. v. Kimberly-Clark Corp.*, CIV.A. 2:09-188-TJW, 2011 WL 1235143 (E.D. Tex. Mar. 30, 2011) (citing *Volkswagen III,* 566 F.3d 1349, 1351 (Fed. Cir. 2009).) The most important consideration relevant to judicial economy is the fact that there are nine Evolutionary Intelligence cases pending in this district, all involving the same patents. The Federal Circuit has made clear that "the copendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *In re EMC Corp.*, MISC. 142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (citing *In re Vistaprint, Ltd.*, 628 F.3d 1342, 1346–47 & n. 3 (Fed. Cir. 2010)). There are a total of 19 parties in these cases, located throughout the United States. The average party is located about 1,163 from the Eastern District of Texas. If each of these cases were transferred to the Northern District of California, the average party would have to travel 1,809 miles—*56%* farther—to get to trial:

| Party | Principal Place Where Witnesses Reside | Miles to N.D. Cal. | Miles to E.D. Tex. |
|---|---|---|---|
| Evolutionary Intelligence | Newton, MA | 2,686 | 1,485 |
| Apple Inc. | Cupertino, CA | 38 | 1,549 |
| Jumptap, Inc. | Boston, MA | 2,693 | 1,493 |
| Kronos Incorporated | Chelmsford, MA | 2,674 | 1,484 |
| RetailMeNot, Inc. | Austin, TX | 1,500 | 204 |
| Sprint | Overland Park, KS | 1,500 | 460 |
| Facebook, Inc. | Menlo Park, CA | 26 | 1,558 |
| BLiNQ Media, LLC | Atlanta, GA | 2,136 | 639 |
| Brand Networks, Inc. | Rochester, NY | 2,356 | 1,217 |

| | | | |
|---|---|---|---|
| Nanigans, Inc. | Boston, MA | 2,693 | 1,493 |
| Foursquare Labs, Inc. | New York, NY | 2,566 | 1,311 |
| Groupon, Inc. | Chicago, IL | 1,855 | 782 |
| LivingSocial, Inc. | Washington, D.C. | 2,435 | 1,118 |
| Millennial Media, Inc. | Baltimore, MD | 2,451 | 1,149 |
| Twitter, Inc. | San Francisco, CA | 0 | 1,573 |
| Crimson Hexagon, Inc. | Boston, MA | 2,693 | 1,493 |
| Dataminr, Inc. | New York, NY | 2,566 | 1,311 |
| Mass Relevance, Inc. | Austin, TX | 1,500 | 204 |
| Yelp Inc. | San Francisco, CA | 0 | 1,573 |
| | TOTAL DISTANCE | 34,368 | 22,096 |
| | AVERAGE DISTANCE PER PARTY | 1,809 | 1,163 |

(*See* Kennedy Decl. Ex. D.)

Another significant consideration is the change in time zones, which makes travel more difficult, especially for employees who need to collaborate with their teams at home while traveling. Maintaining venue in the Eastern District of Texas would require the witnesses of three parties (Evolutionary Intelligence, Crimson Hexagon, and Dataminr) to negotiate a 1-hour time zone change. In contrast, transferring this case to the Northern District of California would require those witnesses to negotiate a 3-hour time zone change, and would also require Mass Relevance's witnesses to negotiate a 2-hour change. The only party that would be benefit from a transfer to California is Twitter, who will otherwise be required to negotiate a 2-hour time zone change.

Referring to the other eight Evolutionary Intelligence cases filed in this District, Twitter argues that "all defendants have moved, or likely will be moving, to transfer their respective cases, and are all willing to litigate in the Northern District of California." (Twitter Br. at 13.) The fact that the Defendants would rather be in California, however, is entirely irrelevant and should not be considered:

> Defendants contend that because they consent to transfer to the Central District of California despite it being further from their home offices, the convenience of their witnesses should not be considered. Just as the Court will not presume that this venue is convenient for a plaintiff because it filed suit here, but considers the actual location of

11

> a plaintiff's witnesses and documents, the Court will not presume that a proposed transferee venue is convenient for defendants.

*EMG Tech., LLC v. Microsoft Corp.*, 6:09 CV 367, 2010 WL 3835768 (E.D. Tex. Sept. 28, 2010).

### B.   The Public Interest Factors Favor the Eastern District of Texas.

The first public interest factor is the administrative difficulties flowing from court congestion. *See Volkswagen I*, 371 F.3d at 203. This factor weighs against transfer. According to the most recent statistics—dated September 30, 2012—in the Northern District of California the median time to trial in civil cases is 29 months. (Kennedy Decl. Ex. G at 3.) In the Eastern District of Texas, the median time to trial is 26.8 months. (*Id*. at 2.) Twitter argues that the difference is smaller, but Twitter misleadingly cites outdated statistics from 2011. (*See* Connor Decl. Ex. F.) Accordingly, Twitter's statistics should be ignored.

The remaining three public interest factors (i.e., the local interest in having localized interests decided at home; the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws or the application of foreign law) are neutral. Although the Northern District of California may have some localized interest in deciding the issue of Twitter's infringement, the Eastern District of Texas would also have a localized interest in deciding the issue of Mass Relevance's infringement. Both districts are familiar with patent law, and neither district would face problems in this litigation relating to conflict of laws or the application of foreign laws.

On balance, the public interest factors weigh in favor of maintaining venue in the Eastern District of Texas.

12

## CONCLUSION

For the reasons stated above, Evolutionary Intelligence respectfully requests that Twitter's motion to change venue be denied.

Dated: April 26, 2013                              Respectfully submitted,


  /s/ Todd Kennedy                    /
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Todd Kennedy, Esq.
Anthony J. Patek, Esq.
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 789-6390
Facsimile: (415) 449-6469
adam@gutridesafier.com
seth@gutridesafier.com
todd@gutridesafier.com
anthony@gutridesafier.com

Charles Ainsworth
Parker Bunt & Ainsworth
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Telephone: (903) 531-3535
Facsimile: (903) 533-9687
charley@pbatyler.com

Attorneys for Plaintiff Evolutionary Intelligence, LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that, on **April 26, 2013**, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.

Dated: April 26, 2013

    /s/ Todd Kennedy                /
Todd Kennedy
Gutride Safier LLP
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 789-6390
Facsimile: (415) 449-6469
todd@gutridesafier.com