IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TWITTER, INC.,<br><br>    Defendant. | Case No.  6:12-cv-00794-MHS-CMC<br><br>JURY TRIAL DEMANDED |

**<u>DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

**I.  INTRODUCTION**

Evolutionary Intelligence ("EI") concedes that it has no connection to this district, no relevant third party witnesses are located here, and no relevant evidence is located here. Confronted with these hard facts, EI ignores the factors relevant to transfer and instead argues that its case against Twitter, Inc. ("Twitter") should remain in this district because of new facts that EI created *after* filing this lawsuit: EI recently moved to the Boston area, and is attempting to amend its complaint to add new East Coast and Texas-based defendants, to support an argument that this district allegedly would be more convenient for them. These post-filing facts, however, are all irrelevant to the transfer analysis under Federal Circuit precedent.

EI ignores that a transfer analysis is based on "the situation which existed when suit was instituted" and that it is improper to consider a court's "central location" in a transfer analysis when no witnesses or evidence reside in that district, as is the case here. Moreover, after telling this Court that venue discovery was necessary for EI to "prepare an informed opposition to the motions to transfer" (Dkt. 24, at 2), EI completely ignores the discovery Twitter provided, presumably because it confirms that virtually all of Twitter's engineers are located in San Francisco and none are located in or near this district. Additionally, EI's own discovery responses show that its relevant documents are located in the Northern District of California and that it believes four third parties with "information or documents relating to this litigation" are also located there.

EI has not identified any evidence located within 100 miles of this district and the vast majority of all known documents and witnesses are in the Northern District of California. EI cannot obscure the plain truth that it brought this litigation in the wrong place. As such, the private and public interest factors that inform the transfer analysis overwhelmingly favor transfer.

**I.      THIS LAWSUIT BELONGS IN THE NORTHERN DISTRICT OF CALIFORNIA**

**A.      Only Facts That Existed "When the Suit was Instituted" Are Relevant.**

The United States Supreme Court and the Fifth and Federal Circuits have clearly and repeatedly held that motions to transfer venue "are to be decided based on 'the situation which existed when suit was instituted.'"  *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, 2013 U.S. App. LEXIS 1985, *8 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).  EI assumes that it will be able to amend its complaint against Twitter to add three new parties[1], and relies extensively on the location of these defendants' documents and witnesses in its argument that this district is "central" and, therefore, the most convenient forum for this dispute.  Similarly, when EI filed its complaint against Twitter, both parties were headquartered in San Francisco.  (Dkt. No. 1, ¶¶1, 2.)  EI's sole principal, Michael De Angelo, declares that EI subsequently moved to the Boston area in December, 2012, although he does not identify an address and provides no other evidence that EI has its principal place of business there.

All of this maneuvering is irrelevant, however, because when EI filed the operative complaint against Twitter, this was a lawsuit between two San Francisco-based companies, not one between a Boston-based company and four defendants spread across the country (although none within 100 miles of this district).  When transfer is analyzed based on the facts that existed when EI filed its Complaint, both parties' documents and witnesses are located in the Northern District of California.

**B.      The Court Should Ignore EI's Attempt to Manipulate Venue.**

The Federal Circuit has held "Section 1404(a) 'should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own

---

[1] Twitter has opposed EI's Motion to Amend.  (Dkt. Nos. 37, 46.)

deliberate acts or omissions, would be proper, convenient and just. [] A plaintiff's attempt to manipulate venue in anticipation of [] a motion to transfer falls squarely within these prohibited activities.'" *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 625 (1964)); *In re Zimmer*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (rejecting plaintiff's contacts with Texas that "appear[] to be recent, ephemeral, and an artifact of litigation") (citing *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1195 (2010) (urging courts to ensure that the purposes of venue laws are not frustrated by a party's attempts at manipulation)). EI's flight from San Francisco and its attempt to add geographically dispersed defendants to this case are plainly meant to manipulate venue and are "prohibited activities."

When EI filed its complaint against Twitter in October, 2012, this was a lawsuit between two San Francisco-based companies. On December 5, 2012, Twitter notified EI's counsel of its intent to file a motion to transfer EI's complaint to the Northern District of California. (Dkt. 13, p. 16.) EI responded by moving its headquarters across the country, as Mr. De Angelo now declares that "[s]ince December 2012, [EI] has been based in the Boston area."[2]

EI then repeatedly requested extensions to oppose Twitter's transfer motion, arguing that the extensions were necessary for EI to conduct venue-related discovery so that it could "prepare an informed opposition" to Twitter's motion. (Dkt. 24, at 2.) In all, EI extended the deadline to file its opposition by three months under the auspices of gathering venue-related information. It appears, however, that these repeated extensions were not related to any need for discovery, since EI's Opposition is completely silent about the information Twitter provided. Rather, EI needed the additional time to identify three companies based thousands of miles away from San Francisco (in New York, Boston, and Austin) who it could then attempt to add as defendants to

---

[2] EI only filed the De Angelo declaration in the Apple case so there is no docket number associated with it in the Twitter case.

its case against Twitter before having to oppose Twitter's transfer motion.[3] The reason EI chose these three parties is clear – to make this district look more convenient than the Northern District of California. (Opp., at 5 (chart).)

EI's maneuvers are plainly an attempt to manipulate venue and are exactly the type of "prohibited activities" that the Federal Circuit has held cannot defeat transfer. This Court should ignore these manufactured "facts" when analyzing Twitter's transfer motion.

### C. All Private Interest Factors Weigh Heavily in Favor of Transfer.

Stripped of these irrelevant post-filing facts, EI presents *no evidence* rebutting Twitter's showing that the Northern District of California is a clearly more convenient forum for this dispute. Moreover, even if the new proposed parties are considered, the Northern District of California remains the more convenient venue since no party resides in this district and EI has not identified any sources of evidence or witnesses located within a 100 miles of this district.[4]

#### 1. Sources of proof are in San Francisco; no sources of proof are here.

The Federal Circuit has repeatedly held that a court should presume that the majority of relevant documents will be from the defendant in a patent case and "[c]onsequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). EI does not argue that any sources of proof are located in this district and admits that "Twitter's documents and code are located in San Francisco, California." (Opp., at 5.) This admission is unsurprising in light of Twitter's evidence that all documents and witnesses relevant to EI's claims are located in its San Francisco

---

[3] Each of the three proposed new defendants in EI's Proposed Amended Complaint is a member of the Twitter Certified Product program. There are currently 21 companies who are part of the program.

[4] Among other deficiencies, EI's proposed amended complaint does not contain allegations sufficient to establish that Crimson Hexagon or Data Minr is subject to personal jurisdiction in Texas. (Dkt. No. 35, Ex. C, ¶¶ 8-9.)

headquarters. (Dkt. 13-1, ¶¶ 9-10.) EI nevertheless argues that this district is more convenient because "on balance [San Francisco, Boston, New York, and Austin] are closer to the Eastern District of Texas than the Northern District of California." (Opp., at 5.) The Federal Circuit has specifically rejected the argument that this court's "centralized location" relative to sources of proof weighs against transfer where, as here, there is no evidence in this district. *In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). Moreover, if the case proceeds in this district every defendant will have to transfer documents to this district, whereas if the case proceeds in the Northern District of California, Twitter will not have to transfer its software development documents and source code. Additionally, the difficulty of moving documents from New York, Boston, and Austin to San Francisco is not materially different from having to move them to Tyler, Texas, thus there is no increased inconvenience to the proposed new defendants by having to produce evidence in the Northern District of California. Since there are indisputably no documents here, while Twitter's software development documents and source code are located in the Northern District of California, this factor still weighs in favor of transfer even if the proposed new defendants are part of the analysis.

### 2. Eleven of twelve third party witnesses are subject to complete subpoena power in the Northern District of California; none are here.

EI disputes the relevance of the seven patent prosecutors and the previous owners of the patents identified in Twitter's Motion, each of whom is subject to complete subpoena power in the Northern District of California.[5] (Opp., at 6-7.) EI does not, however, identify any third party witnesses located in this district or who are subject to the subpoena power of this Court. In fact, EI's discovery responses identify four third parties who "have information or documents relating to this litigation" and all four reside in California, three of them in the Northern District.

---

[5] An eighth prosecuting attorney is located in Salt Lake City, Utah.

Tadlock Decl., Ex. 1. Thus, eleven of twelve third party witnesses identified by both parties are subject to the complete subpoena power of the Northern District of California. None are subject to subpoena here. This factor heavily favors transfer.

### 3. All of Twitter's relevant witnesses are in the Northern District of California; no willing witnesses are in this district.

EI has not identified any party witnesses in this district but instead argues extensively that this district is more convenient for witnesses spread out across the country. (Opp., at 9-10). The Federal Circuit has held that it is improper for a district court to use "its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue." *In re Genentech*, 566 F.3d at 1344; *see also Droplets, Inc. v. E*Trade Fin. Corp.*, 2012 U.S. Dist. LEXIS 111694, *8-9 (E.D. Tex. Mar. 5, 2012); (a court's "'centralized' location . . . is generally not a proper consideration" when considering transfer); *Tse v. Blockbuster, LLC*, 2013 U.S. Dist. LEXIS 33234, *11-12 (E.D. Tex. Jan. 17, 2013) (same). Since there are no willing witnesses in this district, its "central" location for parties on both coasts is irrelevant to the transfer analysis.

EI also argues that Twitter's identification of witnesses is too vague to consider. (Opp., at 9.) This argument, however, ignores the discovery EI received from Twitter. Twitter provided EI evidence that virtually all of its engineers work in San Francisco. That discovery also showed that no Twitter engineer works within 100 miles of this district. Tadlock Decl., Ex. 2. By EI's own admission, Twitter's engineers will have technical knowledge relevant to EI's allegations because they are the most knowledgeable about Twitter's software development documents and source code. The only known willing witness who currently resides outside of the Northern District of California is Mr. De Angelo (who apparently lived in San Francisco when the complaint was filed). Since EI's sole function is monetizing its patents, requiring Mr. De Angelo to travel will have minimal impact on EI's business. On the other hand, requiring

Twitter's engineers to travel to this district will require them to miss work for multiple days at a time, which has a significant impact on Twitter's ongoing business. Moreover, it just as convenient for witnesses from New York and Boston to travel to San Francisco as it is to travel to Tyler. This factor heavily favors transfer even considering the proposed new defendants.

### 4.     Practical problems do not weigh against transfer.

EI argues that its case against Twitter should remain here because this district is more convenient for all parties in the 9 cases EI has filed here and judicial economy, therefore, requires all cases to proceed in a "centralized" location. (Opp., at 9-10.) EI misleadingly cites *In re EMC*, arguing that this Court should consider the proposed new defendants in its transfer analysis since "the co-pendency of cases involving the same patent [is a] permissible consideration[] in ruling on a motion to transfer venue." (Opp., at 9). EI omits the preceding section of the opinion, which declared, "the district court could not properly rely on judicial economy involved in retaining the very cases that were the subject of the transfer motion" and explicitly stated that "considerations of judicial economy arising *after* the filing of the suit do not weigh against transfer. . . ." *In re EMC Corp.*, 2013 U.S. App. LEXIS 1985, at *7-8 (emphasis in original). The new parties EI is attempting to add to other cases, long after filing suit against Twitter, are irrelevant to any analysis of judicial economy.

Additionally, as stated in Twitter's opening brief, EI's cases against the 8 other defendants are all still in their infancy, and the mere existence of co-pending lawsuits involving the same patent does not "create" judicial economy. *See Innovative Global Sys. LLC v. OnStar, LLC*, 2012 U.S. Dist. LEXIS 114504, at *20 (E.D. Tex. Feb. 14, 2012) ("co-pending suit in its infancy . . . does not increase the Court's familiarity with the patents-in-suit and therefore does not implicate judicial economy"); *Klausner Techs., Inc. v. Interactive Intelligence Grp., Inc.*, No. 6:11-cv-00578-LED, at 7 (E.D. Tex. Sept. 26, 2012) (same).

### D. The Public Factors Favor Transfer.

#### 1. Court congestion is neutral.

EI argues that this district is more convenient because the median time to trial in the Northern District of California is 2.2 months longer than this district (29 months vs. 26.8 months). (Opp., at 11.) Courts in this district have found a few months' difference is "not sufficiently significant or indicative of a marked difference in levels of court congestion." *InMotion Imagery Techs., LLC v. Imation Corp.*, 2013 U.S. Dist. LEXIS 41830, *13 (E.D. Tex. Mar. 26, 2013). Moreover, where, as here, "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347. This factor is neutral.

#### 2. The Northern District of California has a localized interest in resolving this dispute.

EI argues that even though the Northern District of California has some localized interest in resolving this dispute because Twitter is located there, this district has a "localized interest in deciding the issue of Mass Relevance's infringement." (Opp., at 11.) But Mass Relevance is headquartered in Austin, Texas, which is not in this district, so this argument does not make sense. The Northern District of California has a clearly stronger interest in resolving this dispute "because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1337. This factor favors transfer.

### II. CONCLUSION

For all the foregoing reasons, the Court should grant Twitter's motion to transfer to the Northern District of California.

Dated:  May 15, 2013  Respectfully submitted,

*/s/ Robert D. Tadlock*
ROBERT D.  TADLOCK
KILPATRICK TOWNSEND & STOCKTON, LLP
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email:  rtadlock@kilpatricktownsend.com

MICHAEL E. JONES
State Bar No.  10929400
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846
Email:  mikejones@potterminton.com

**ATTORNEYS FOR DEFENDANT TWITTER, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served on May 15, 2013, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Robert D. Tadlock*
ROBERT D.  TADLOCK

65423251V.1