## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **Evolutionary Intelligence, LLC,** | § | |
| | § | |
| **v.** | § | **Case No. 6:12-cv-00783** |
| | § | |
| **Apple, Inc.** | § | |

| | | |
|---|---|---|
| **Evolutionary Intelligence, LLC,** | § | |
| | § | |
| **v.** | § | **Case No. 6:12-cv-00784** |
| | § | |
| **Facebook, Inc.** | § | |

| | | |
|---|---|---|
| **Evolutionary Intelligence, LLC,** | § | |
| | § | |
| **v.** | § | **Case No. 6:12-cv-00792** |
| | § | |
| **Twitter, Inc.** | § | |

## MEMORANDUM OPINION AND ORDER

The above-referenced cases were referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636.  Before the Court are the following pending motions: (1) Defendant Apple Inc.'s Motion for Relief Pursuant to 28 U.S.C. §1404(a) (Docket Entry #18); (2) Defendant Facebook's Motion to Transfer Venue to the United States District Court for the Northern District of California (Docket Entry #16); and (3) Defendant Twitter, Inc.'s Motion to Transfer Under 28 U.S.C. §1404(a) (Docket Entry #13). The Court, having carefully considered the parties' relevant briefing, **GRANTS** the motions and **ORDERS** the above actions be transferred to the United States District Court for the Northern District of California.

## I.      BACKGROUND

On October 17, 2012, Evolutionary Intelligence, LLC ("Evolutionary" or "Plaintiff") filed these lawsuits against unrelated defendants Apple, Inc. ("Apple"), Facebook, Inc. ("Facebook"), and Twitter, Inc. ("Twitter) (collectively "Defendants"), alleging infringement of U.S. Patent Nos. 7,010,536 (the "'536 patent") and 7,702,682 (the "'682 patent")(collectively, the "Asserted Patents"). These related patents concern transmitting, receiving, manipulating, and searching data stored in "containers" with specified characteristics. That same day, Evolutionary filed  other complaints asserting infringement of the '536 and '682 patents against unrelated defendants Foursquare Labs, Inc.; Groupon, Inc.; LivingSocial, Inc.; Millennial Media, Inc.; several Sprint companies; and Yelp, Inc.

Evolutionary is "a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in San Francisco, California." Complaint (Docket Entry #1, ¶1). According to the Declaration of Colman McCarthy, the LinkedIn Profile for Michael De Angelo, CEO of Incandescent, Inc. and the sole named inventor of both patents, lists the San Francisco Bay Area as his location. (McCarthy Decl. ¶8).  According to Mr. De Angelo's declaration in support of Plaintiff's response, however, since December of 2012, Evolutionary Intelligence has been based in the Boston area.  (De Angelo Decl. ¶2).  Mr. De Angelo has also been based in the Boston area since that time as well.   (*Id*. at ¶3).

Defendant Apple is a California corporation headquartered in the Northern District of California at Cupertino, California. (Compl. ¶ 2; Buckley Decl., ¶ 3).  Apple has maintained its headquarters in Cupertino since its beginning in the 1970s.  (Buckley Decl., ¶3).  Apple has approximately 13,700 employees who work in or near its headquarters, and its management and primary research and development facilities are located in Cupertino, California as well.  (*Id*.).

The vast majority of documents (specifically technical documentation, marketing and sales materials regarding Apple's iOS software, and the electronic and paper records of Apple's business records related to product revenue) relevant to allegations against Apple are located in Apple's headquarters in Cupertino, California.  (*Id*. at ¶4). Finally, the majority of witnesses likely relevant to the infringement allegations against Apple in this action, including the witnesses with knowledge of the research, design, development, and marketing of the iOS software, reside and work in the Northern District of California. (*Id*. at ¶ 4).

Defendant Facebook is a Delaware corporation with headquarters in Menlo Park, California (Compl. ¶ 2; Jordan Decl., ¶ 2).  Facebook moved to Palo Alto, California in 2004 and to Menlo Park in 2011.  (*Id*.).  Both Menlo Park and Palo Alto are within the Northern District of California.  (*Id*.).  The vast majority of Facebook's sources of proof (including the source code related to the www.facebook.com website) and employees knowledgeable about the design, development, and operation of the website are located at Facebook's Menlo Park headquarters (*Id*. at ¶¶ 3-4).  Facebook has no offices, facilities, or employees working in the Eastern District of Texas nor does it have any relevant documents located in this district.  (*Id*. at ¶5).

Defendant Twitter is a Delaware corporation headquartered in San Francisco, California. (Compl. ¶ 2; Axelsen Decl., ¶ 1).  Twitter's U.S. sales, finance, and marketing operations and the Twitter employees with knowledge regarding these operations are based in San Francisco.  (*Id*. at ¶ 4).   Twitter has three employees in Texas, but none of those employees are located within Tyler, Texas. (*Id*. at ¶6). None of them are knowledgeable about the computer systems that provide users access to the Twitter website or content through the Twitter app.  (*Id*.).    In addition, the vast majority of sources of proof relating to the products and functionalities that Twitter provides are located in the Northern District of California.  (*Id*. at ¶9).

## II.    DEFENDANTS' MOTIONS

According to Defendants, the Northern District of California is a clearly more convenient forum because all relevant factors tie this litigation to the Northern District of California, where the parties and the inventor resided at the time of filing.   According to Defendants, the private interest factors overwhelmingly favor transfer:

- All of the documents likely relevant to this lawsuit, as well as all of the likely party witnesses, are located in the Northern District of California.

- Other relevant documents (i.e. sensitive source code) are also located in the Northern District of California.

- No witnesses or documents relevant to this lawsuit are located in Texas or the Eastern District of Texas.

- The majority of the witnesses, including the vast majority of the software engineers, reside and work in the Northern District of California.

- All known non-party witnesses are located outside of Texas and more than 100 miles from Tyler, outside the subpoena power of the Court.  The vast majority of the prosecuting attorneys are located either in the Northern or Southern Districts of California, thereby falling under the subpoena powers of the Northern District of California.

- One patent prosecutor is located in Salt Lake city, which is 700 miles away from San Francisco and 1300 miles from Tyler.

- It is likely that various companies that have owned the patents-in-suit over the years may have information relevant to this case, thus it is likely that any employees with knowledge regarding any attempts at commercializing the alleged inventions of the patents-in-suit would be located in the San Francisco area.

- There is no risk of delay or prejudice from transferring because these cases are still in the initial stages.

Defendants further assert the public interest factors weigh in favor of transfer:

- The Northern District of California and the Eastern District of Texas have busy dockets, but the time to trial in the Northern District of California is slightly shorter than the Eastern District of Texas.

- Courts in both districts are equally capable of applying patent law to infringement claims.

- Local interests favor adjudication of this case in Northern California, as the witnesses and headquarters are in the Northern District of California.

- The alleged infringing products and services were principally researched, designed, developed, or carried out in the Northern District of California.

### D.      Plaintiff's response

In response, Plaintiff asserts it is based in the Boston, Massachusetts area.  Plaintiff also relies on the co-pendency of its other cases and asserts the Eastern District of Texas is a "far more convenient venue overall."  Plaintiff's resp. to Apple's mot. at pg. 1. According to Plaintiff, if venue is maintained in the Eastern District of Texas, each party would be required to travel less distance than if the cases were transferred to the Northern District of California.[1]  Plaintiff further asserts Defendants have failed to identify a single technical witness who resides in California, and Defendants rely on vague assertions about "where they think relevant witnesses may reside."

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*Volkswagen II)*. Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted. *Volkswagen II*, 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v.*

---

[1] Regarding the distance calculations, the Court points out that Evolutionary included additional defendants in the calculations even though the Court had not yet ruled on Evolutionary's motions for leave to add those additional defendants.  The Court has now denied Evolutionary's motions for leave to file amended complaints adding the additional defendants.

*Gilbert*, 330 U.S. 501, 507–08 (1947). The moving party must show good cause by demonstrating the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314. Otherwise, a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred. *Id.* at 315 n.10.

When deciding whether to transfer an action, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *Volkswagen II,* 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The relevant factors are divided between these private and public interests. *Gilbert*, 330 U.S. at 508. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen II*, 545 F.3d at 315 (quotation omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (quotation omitted).  These factors are not exhaustive, and no single factor is dispositive.  *Id.*

The United States Supreme Court and the Fifth and Federal Circuits have held that motions to transfer venue "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, 2013 U.S. App. LEXIS 1985, *8 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)). The Federal Circuit has further held "Section 1404(a) 'should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just. [] A plaintiff's attempt to manipulate venue in

anticipation of [] a motion to transfer falls squarely within these prohibited activities.'" *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 625 (1964)).

## IV.   DISCUSSION

### A.  Jurisdiction in the Transferee Forum

The first question the Court must address when considering a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit originally could have been filed in the destination venue, here, the Northern District of California. The movants bear the burden of establishing personal jurisdiction and venue as to all defendants in the transferee forum. *See Chirife v. St. Jude Med., Inc.*, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). This determination is made as the circumstances existed at the time of filing. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

Pursuant to 28 U.S.C. § 1400(b), a patent infringement action may be brought in the judicial district where the defendant resides. A corporate defendant "resides" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). Pursuant to 28 U.S.C. § 1332(c), a corporation is deemed to be a citizen of every state in which it has been incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c). *Volkswagen II*, 545 F.3d at 312.

As noted above, Apple maintains its principal place of business in Cupertino, California; Facebook maintains its principal place of business Menlo Park, California; and Twitter maintains its principal place of business in San Francisco, California.  Defendants submit that Plaintiff could have filed these cases in the Northern District of California.  Plaintiff does not dispute these assertions.  Thus, there is no dispute over whether the case could have been filed in the

Northern District of California. The Court weighs below the private and public interest factors in determining whether the Northern District of California would be clearly more convenient.

## B. Private Interest Factors

### 1. <u>The Relative Ease of Access to Sources of Proof</u>

The first private interest factor is the relative ease of access to sources of proof. Despite technological advances that lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* "This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Klausner Technologies, Inc. v. Interactive Intelligence Group, Inc.*, 6:11cv578-LED at pg. 3 (E.D. Tex. 2012)(unreported).   Documents that have been moved to a particular venue in anticipation of a venue dispute should not be considered. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009). Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Plaintiff does not argue that any relevant sources of proof are located here.   Rather, Plaintiff argues Defendants fail to identify a single technical witness that resides in California and rely on vague assertions about "where they think relevant witnesses may reside." Defendants counter that they are unable to specifically identify the most relevant documents and code because Plaintiff's complaint is vague.  However, Defendants collectively assert it is indisputable that the sources of proof they have identified (the development documents and source code) are

located in the Northern District of California.  And according to Twitter, some source code and other confidential trade secrets may be so sensitive that they can only be inspected in San Francisco.

The vast majority of Apple's documents (specifically technical documentation, marketing and sales materials regarding Apple's iOS software, and financial documentation relating to calculation of damages) relevant to allegations against Apple are located in Apple's headquarters in Cupertino, California.  Apple's management and primary research and development facilities, electronic and paper records, and business records related to product revenue are located in or near Cupertino, California.

Facebook's management team and primary engineering facilities are located at its headquarters in Menlo Park.  Nearly all of the highly proprietary information and source code relating to the www.facebook.com website are stored in Facebook's various data center, which are accessible and ultimately managed from Menlo Park.  In addition, all of the information related to Facebook's general operations, marketing, financials, and customer service is managed from Menlo Park.

Twitter's San Francisco headquarters serve as the base for Twitter's U.S. sales, finance, and marketing operations. The documents relating to these aspects of Twitter's operations are likewise located in San Fransisco.

As is true with most patent infringement cases, the majority of the relevant evidence will come from the defendant.  *See In re Genentech*, 566 F.3d at 1345. Each of Defendants' headquarters is located in the Northern District of California (Cupertino, Menlo Park, and San Francisco respectively), and Plaintiff's headquarters was located there when this lawsuit was filed.  Because the "physical accessibility to sources of proof" is an important factor, even in

view of modern advances in the electronic transportation of documents, the Court finds this factor favors transfer to the Northern District of California. *See Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, 2012 WL 194370, at *5 (E.D. Tex. Jan 23, 2012); *Network Prot. Sciences, LLC v. Juniper Networks, Inc.*, 2012 WL 194382, at *3 (E.D. Tex. Jan. 23, 2012) (both citing *In re Volkswagen*, 545 F.3d at 318 and *In re TS Tech*, 551 F.3d at 1321).

## 2.   The Availability of Compulsory Process

The next factor is the availability of compulsory process. Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses. Absolute subpoena power means the power to compel attendance at both depositions and trial. *Hoffman-La Roche,* 587 F.3d at 1337–38.

Under Federal Rule of Civil Procedure 45, a court has power to compel trial testimony if the witness is served: (1) within the district; (2) within 100 miles of the courthouse; or (3) within the state of the issuing court. FED. R. CIV. P. 45(b)(2)(A)–(C). *But see* FED. R. CIV. P. 45(c)(3)(B)(iii) & 45(c)(3)(C) (limiting a court's authority to compel a non-party witness to travel more than 100 miles to testify at trial, unless there is a "substantial need for the testimony" and the witness is reasonably compensated). A court can compel deposition testimony of a non-party witness within 100 miles of his home or workplace. *See* FED. R. CIV. P. 45(c)(3)(A)(ii).

Defendants assert all of the known third-party witnesses are located outside of the subpoena power of the Eastern District of Texas.  According to each of these defendants, most of these witnesses are within the complete subpoena power of the Northern District of California. Specifically, they identify the following prosecuting attorneys who are located in the Northern District of California: (1) James Okamoto (San Jose), (2) Tamara Fraizer (Redwood City), (3) Dorian Cartwright (San Jose), and (4) Sanjeet Dutta (Redwood Shores). Connor Decl., Exs. G-J.

They further identify the following prosecuting attorneys who are located in southern California: (1) Carl Kukkonen, III, (2) William Hunter, and (3) Mark. Connor Decl. Exs. K-M. According to Defendants, the Northern District of California has subpoena power over these non-party witnesses, as the court's subpoena power extends throughout California under Federal Rule of Civil Procedure 45(b)(2) and California Code of Civil Procedure § 1989. *See Ahern Rentals, Inc. v. 916 Electric, Inc.*, 2012 WL 589476, at *4 (D. Nev. Feb. 22, 2012). Defendants further asserts an eighth prosecuting attorney (Greg Sueoka) is located in Salt Lake City, Utah, which is 400 miles closer to the transferee district than this district.

Defendants also contend that the immediately prior assignee of the patents-in-suit, Incandescent, Inc., lists its location as San Francisco.  According to Defendants, it is highly probable that witnesses working for the companies that previously owned the patents-in-suit are located in San Francisco. The record further reflects that Incandescent, Inc. obtained the patents by assignment from Pattern Intelligence, Inc. of Palm Springs, California. Connor Decl., Exs. A-C.

Plaintiff asserts none of the Defendants have identified a single technical witness who resides in California, and this Court should give this factor less weight due to their failure to identify specific potential witnesses other than patent prosecution counsel.  *See Lonestar Inventions, L.P. v. Sony Electronics, Inc.*, 2011 WL 3880550, *3 (E.D. Tex. 2011)(unreported). According to Plaintiff, Defendants do not identify the likely content of the seven patent prosecution counsel's testimony.  Plaintiff further asserts most of the patent prosecutors identified are not relevant to this litigation.

Regardless, this factor weighs heavily for transfer if the majority of non-party witnesses are located within the Northern District of California.  *See In re Zimmer*, 609 F.3d 1378, 1381

(Fed. Cir. 2010).  Plaintiff does not identify any third party witnesses located in this district or who are subject to the subpoena power of this court.  According to Defendants, eleven of the twelve third-party witnesses identified by both parties are subject to the complete subpoena power of the Northern District of California; one lives in Utah; and none are located within the complete subpoena power of this Court. This factor weighs in favor of transfer.

### 3.   The Cost of Attendance for Willing Witnesses

One of the most important factors is the cost of attendance for witnesses. In analyzing the cost of attendance of willing witnesses, courts consider the convenience of both party and non-party witnesses. *See In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (per curiam) (*Volkswagen I*) (requiring courts to "contemplate consideration of the parties and witnesses"). Nevertheless, the convenience to non-party witnesses is afforded greater weight than that of party witnesses. *NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, 2010 WL 5068146, at *6 (E.D. Tex. 2010).

The Fifth Circuit applies a 100-mile rule to assist in the analysis of this factor. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 204–05; *see In re TS Tech*, 551 F. 3d at 1320. The greater distance witnesses have to travel for trial, the greater their expense and the longer they will be away from home and employment. *See id.*

As a threshold matter, the Northern District of California and the Tyler Division of the Eastern District of Texas are greater than 100 miles apart. Thus, the Court must assess the inconvenience to witnesses having to travel to one venue versus the other. *See Genentech*, 566 F.3d at 1344 (explaining that witnesses who "will be required to travel a significant distance no matter where they testify" are discounted under the 100-mile rule).

As discussed above, eleven non-party witnesses are located in California, and one is located in Utah.  Although Plaintiff does not identify a single willing witness who resides in this district or within 100 miles of this district, Plaintiff argues the Defendants have failed to identify its own witnesses with sufficient specificity. However, each of the Defendants has produced discovery which reveals that most of their employees reside in or work in the Northern District of California.

As outlined above, each of Defendants' employees reside in or work in the Northern District of California. Specifically, the majority of Apple witnesses likely to have relevant information, including the vast majority of Apple's software engineers, reside and work in the Northern District of California. Apple asserts it has some of its 250 nationwide retail stores in the Eastern District of Texas, but it is unaware of any employee in any of these retail stores that could serve as a relevant witness in this litigation.  Apple is not aware of any employee with any unique information relevant to this case who resides in the Eastern District of Texas.

Facebook asserts the majority of its employees knowledgeable about the design, development and operation of www.facebook.com are located at Facebook's Menlo Park headquarters. Facebook has no offices, facilities, or employees working in the Eastern District of Texas and states that it is unaware of any relevant documents located in the Eastern District of Texas. Similarly, virtually all of Twitter's engineers are located in San Francisco, California. Although there are three Twitter employees based in Texas, none of the Texas-based employees are located within 100 miles of this district or have knowledge about the design, configuration, or operation of the computer systems that provide users access to the Twitter website or content through the Twitter app.  Continuing this litigation in the Eastern District of Texas would force the willing witnesses of Apple, Facebook, and Twitter to travel over 1800 miles to attend trial.

The only known willing witness who currently resides outside of the Northern District of California is Mr. De Angelo, the inventor of the patents-in-suit.  Although Mr. De Angelo resides in Massachusetts, which Plaintiff asserts is closer to Texas, he lived in San Francisco when this case was filed. (De Angelo Decl., ¶ 3). The Northern District of California is more convenient for the vast majority, if not all, of the party witnesses. *See In re Acer Am. Corp*, 626 F.3d at 1255 ("the combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff'[s] chosen forum is an important consideration").

If this case is not transferred, all of the willing witnesses would have to travel significant distances for trial.  However, if the case is transferred to California, only Mr. De Angelo would have to travel, and he will be required to travel a significant distance no matter the district. Overall, a much greater number of party and non-party witnesses in this case would find the Northern District of California is a clearly more convenient venue. Accordingly, this factor favors transfer.

### 4.  All Other Practical Problems

The fourth factor serves as a catchall for concerns that may weigh for or against transfer. For example, transfer is disfavored when the issue is raised late in the case. *See, e.g.*, *Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009). Judicial economy may counsel against transferring a case when it would result in overlapping issues being simultaneously adjudicated in different districts. *In re Vistaprint Ltd.*, 528 F.3d 1342, 1345 (Fed. Cir. 2010). Generally, other practical problems focus on issues of judicial economy. Particularly, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ.*

*of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986)).

Importantly, "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, No. 142, 2013 WL 324154, at *2 (Fed. Cir. Jan. 29, 2013) (quoting *Blaski*, 363 U.S. at 343). "While considerations of judicial economy arising *after* the filing of a suit do not weigh against transfer, a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed." *Id.* "[A] district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *Id.*

Defendants argue this case is in its early stages, and there is no risk of delay or prejudice from transferring this case to the Northern District of California.  In response, Plaintiffs asserts the most important consideration relevant to judicial economy is the fact that there are other cases pending in this district, all involving the same patents. The Federal Circuit has made clear that "the co-pendency of cases involving the same patent [is a] permissible consideration[] in ruling on a motion to transfer venue." *In re EMC Corp.*, MISC. 142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013).

In considering the other pending cases and their effect on judicial economy, the Court first notes Apple and Facebook's argument that "all defendants have moved, or likely will be moving, to transfer their respective cases, and are all willing to litigate in the Northern District of California." (Docket  Entry #18 at pg. 2) (Docket Entry #16 at pg. 1).  Notwithstanding whether any of the other cases will ultimately be transferred, all of the *Evolutionary* cases are still in their infancy. The combined claim construction hearing is still nine months away.  Thus, the Court is

not yet familiar with the Asserted Patents.  *See Klausner*, 6:11cv578-LED, at 7.  Although the

*Evolutionary* cases involve related patents, Plaintiff has not demonstrated that the Court has

experience with or is familiar with these particular patents at this time. *See In re Vistaprint Ltd.*,

628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010).  Evolutionary will not be unduly prejudiced if this

case is transferred.  Even so, based on the original co-pendency of the other *Evolutionary* cases,

the Court finds that the traditional notions of judicial economy do not weigh for or against

transfer in this case.

### C.  Public Interest Factors

### 1.  <u>The Administrative Difficulties Flowing From Court Congestion</u>

The first public interest factor is court congestion. Generally, this factor favors a district

that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. Of all the venue factors,

this is the "most speculative." *Id.* When "several relevant factors weigh in favor of transfer and

others are neutral, then the speed of the transferee district court should not alone outweigh all of

those other factors." *Id.*

Plaintiff argues this case should not be transferred because the time to trial in the Eastern

District of Texas is slightly shorter than in the Northern District of California.  Even so, a few

months difference is "not sufficiently significant or indicative of a marked difference in levels of

court congestion."  *InMotion Imagery Techs., LLC v. Imation Corp.*, 2013 WL 1279055, *4

(E.D. Tex. 2013).   Moreover, this factor is the most speculative of the venue factors.

Accordingly, the Court finds this factor is neutral.

### 2.  <u>The Local Interest in Having Localized Interests Decided at Home</u>

The next public interest factor is the local interest in adjudication of the case.

Traditionally, the location of the alleged injury is an important consideration. *See Frito-Lay N.*

*Am., Inc. v. Medallion Foods, Inc.*, 867 F.Supp.2d 859, 872 (E.D. Tex. 2012) (citing *In re TS Tech*, 551 F.3d at 1321). When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community. *Hoffman-La Roche*, 587 F.3d at 1336. The local interest in the litigation is an important consideration because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp.*, 330 U.S. at 508–09).

As previously stated, Defendants are each headquartered in the Northern District of California (Cupertino, Menlo Park, and San Francisco respectively), and the vast majority of their employees are located there as well.  The research, design, and development of the allegedly infringing products took place in each of the Defendants' headquarters.  As the Defendants' home district and the former headquarters of Plaintiff, the Northern District of California's interest in this case is extremely significant. This district does not have a substantial interest in the outcome of this litigation. Considering the balance of these facts, the Court finds this factor favors transfer.

### 3.  **The Familiarity of the Forum With the Governing Law**

Courts are also to consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court notes that both the Northern District of California and the Eastern District of Texas are equally capable of applying the law regarding patent infringement. *See In re TS Tech*, 551 F.3d at 1320.

**4.  The Avoidance of Unnecessary Problems of Conflict of Laws**

The parties acknowledge that this case does not present conflict of laws issues. Thus, this factor is neutral.

**V.    CONCLUSION**

Having fully considered all of the private and public interest factors, each of the Defendants have met their burden to show that the Northern District of California is "clearly more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 315.   In balancing all of the factors, the Court finds that Apple, Twitter, and Facebook have met their "significant burden" under § 1404(a). *Id.* at 315 n.10. Accordingly, Defendants' motions to transfer are **GRANTED**.

The Court **ORDERS** that Plaintiff's above-entitled and numbered causes of action against Apple, Facebook, and Twitter be transferred to the United States District Court for the Northern District of California.

**It is SO ORDERED.**

**SIGNED this 27th day of August, 2013.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE